IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE | § | |
| INSURANCE COMPANY and | § | |
| STATE FARM COUNTY MUTUAL | § | |
| INSURANCE COMPANY OF TEXAS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | Case No. 22-806 |
| | § | |
| | § | |
| SANJAY MISRA, M.D.; and | § | |
| SANJAY MISRA, M.D., P.A. | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS

Defendants, Sanjay Misra, M.D. and Sanjay Misra, M.D., P.A., move to dismiss with prejudice the Complaint of Plaintiffs, State Farm County Mutual Insurance Company and State Farm County Mutual Insurance Company of Texas (collectively, "State Farm"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction because State Farm has no standing to assert violations of 18 U.S.C. § 1962(c), pursuant to Rule 12(b)(6) because the Complaint fails to allege fraud with the particularity required by Rule 9(b) to adequately plead a predicate act of mail fraud under 18 U.S.C. § 1341, and further because State Farm fails to adequately plead essential elements of a claim for money had and received. As such, State Farm's Complaint fails to state a claim upon which relief can be granted. Oral argument is requested.

## BACKGROUND

1.      State Farm brings two causes of action against Defendants: Count I for violating the Racketeering Influenced Corrupt Organizations Act ("RICO"), and Count II for the equitable

claim of money had and received.  *See* ECF No. 1, ¶ 12.  State Farm attached thirty-four exhibits to its Complaint, bringing the combined total to over 300 pages.  *See* ECF No.'s 1, 1-2 – 1-36. Despite the Complaint's length and inflammatory language, it fails to allege any plausible claim.

2.      The Complaint portrays Defendants as the ones who targeted State Farm.  *See* ECF No. 1, ¶¶ 10, 66-67.  State Farm accuses Defendants of engaging in a fraudulent scheme involving allegedly medically unnecessary treatment of automobile accident victims.  *See* ECF No. 1, ¶¶ 1, 4, 10.  On the contrary: Defendants are just the latest targets of State Farm who, along with other major automobile insurance companies, are engaging in a concerted litigation strategy designed to harass, intimidate, and dissuade physicians from treating automobile accident victims who assert claims against those insured by State Farm.[1]

3.      After State Farm investigated demand packages of claimants, it voluntarily paid sums to settle claims of its insureds and third-party plaintiffs – claims that include amounts for treatment provided by Dr. Misra because, as an orthopedic surgeon, he treats automobile accident victims.  *See* ECF No. 1, ¶¶ 10, 66-67, 74, 76.  But despite State Farm's obligation to conduct an investigation of these claims, and instead of then contesting the validity of Dr. Misra's treatments in connection with settlement, State Farm now seeks to recoup damages related to settlements paid to or on behalf of its insureds – thereby revoking the consideration upon which the settlements were reached – solely on the basis of State Farm's unsubstantiated contention that the services provided by Dr. Misra were somehow fraudulent.  Citing no medical authority or standards, State

---

[1] *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Hakki*, No. 2:21-CV-11940 (E.D. Mich. 2021); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220 (E.D. Mich. 2016); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp.2d 212 (E.D.N.Y. 2009); *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. CV 09-2990 JS WDW, 2009 WL 10449036 (E.D.N.Y. Dec. 30, 2009); *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs. Inc.*, No. 16-13040, 2017 WL 877396 (E.D. Mich. Mar. 6, 2017); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp.2d 1323 (S.D. Fla. 2011); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp.2d 141 (E.D.N.Y. 2005); *State Farm Mut. Auto. Ins. Co. v. Friedman*, No. CIV.A.3:98CV2918-L, 2002 WL 649417 (N.D. Tex. 2002).

Farm gives confusing and at times conflicting explanations of what State Farm deems constitutes "a legitimate pain management clinical setting" and whether the treatments provided by Dr. Misra are medically necessary.[2]  *See* ECF No. 1, ¶ 26.  Furthermore, the Complaint only notes the sums paid out, not the victim's recovery, suggesting State Farm's concern is less about medical necessity, and more centered on buyer's remorse.

4.      The Complaint should be dismissed in its entirety because State Farm does not sufficiently plead factual allegations to state a plausible claim for relief under either cause of action asserted against Defendants.  First, Count I fails to sufficiently allege RICO standing.

5.      Second, Count I also fails to allege a RICO § 1962(c) claim with sufficient particularity to satisfy Rule 9(b).  State Farm relies on wholly conclusory allegations, rank speculation, conjecture, and insinuation to support its allegations of violations of the mail fraud statute, 18 U.S.C. § 1341, as predicate acts for RICO liability.  This is insufficient to satisfy Rule 9(b)'s particularity requirement for pleading fraud and yet another reason to dismiss Count I.

6.      Third, Count II, claiming relief for money had and received, likewise fails to sufficiently plead its allegations of fraud with particularity under Rule 9(b) to support a plausible claim against Defendants, and the Complaint also fails to allege facts essential to either the "money had" or the "money received" requisite elements under Texas Law.

### LEGAL STANDARD

7.      To give a defendant fair notice of what the claim is and the grounds upon which it

---

[2] For example, State Farm criticizes Dr. Misra's use of Epidural Steroidal Injections ("ESIs") on patients prior to exhaustion of conservative care.  *See* ECF No. 1, ¶¶ 41-42.  However, the Complaint also states ESIs may be used when appropriate indications, such as radiating nerve-related pain from the lower back into the legs and buttocks, are present "to alleviate pain to facilitate conservative care."  *See* ECF No. 1, ¶¶ 23-24.  Indeed, the records of patient K. F. betrays State Farm's own reasoning: K. F. had received chiropractic treatment for radiating pain from the lower back to the buttocks and legs before going to Dr. Misra after the patient's pain severity increased.  *See* ECF No. 1-11.

rests, Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avert dismissal under Fed. R. Civ. P. 12(b)(6), the complaint must provide sufficient factual allegations that, when assumed to be true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

8.      Facial plausibility comes from pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading standards of Rule 8 are not satisfied by a complaint that offers only labels and conclusions, a formulaic recitation of the elements, or naked assertions devoid of further factual enhancement. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

9.      Instead, the Court must draw on its "judicial experience and common sense" when determining whether a set of facts has crossed the line from possible or conceivable to plausible. *Id.* at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998).

## ARGUMENT & AUTHORITIES

### I.      STATE FARM FAILS TO STATE A VIABLE RICO CLAIM UNDER 18 U.S.C. § 1962(C).

10.      Count I of the Complaint accuses Defendants of violating 18 U.S.C. 1962(c). "A claim for civil RICO under § 1962(c) must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). A RICO

plaintiff must also allege a direct injury to his business or property resulting from the conduct constituting a violation.  *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, (1985).

11.     Rule 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Dismissal for lack of subject matter jurisdiction is warranted because State Farm cannot prove any set of facts that would entitle it to relief.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**A.     State Farm's Causal Chain for RICO Claims is Too Attenuated.**

12.     To prove constitutional standing under Article III, plaintiffs must allege (1) a concrete and particularized injury that is (2) fairly traceable to the challenged act of the defendants, and that is (3) likely to be redressed by the requested relief.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).  State Farm claims non-party personal injury attorneys mailed demand packages that included clinic records and bills of Defendants for allegedly unnecessary medical treatments and procedures, and that State Farm responded by sending settlement checks. *See* ECF No. 1, 71. When harm is "speculative and does not show a conclusive financial loss," it does not constitute an injury under RICO.  *Earl v. Boeing Co.*, 339 F.R.D. 391, 425 (E.D. Tex. 2021) (citing *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995)).  Such speculation is rampant in State Farm's contention that it agreed "to settle claims that otherwise might not have been settled" or agreed to pay substantially more to settle claims of accident victims who submitted claims for insurance benefits under State Farm policies.  *See* ECF No. 1 ¶¶ 10, 62. This does not demonstrate the requisite concrete financial loss of a RICO injury.

13.     The line of causation between State Farm's injury and Defendants' challenged conduct is too attenuated.  *See Earl v. Boeing Co.*, 339 F.R.D. 391, 416 (E.D. Tex. 2021) (citing

*Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986)).  State Farm's causation link is its own reliance on the allegedly fraudulent medical documentation and bills.  *See* ECF No. 1, ¶ 65.  And causation is even more attenuated after State Farm's RICO Demand Appendix is examined, which reveals 99.99% of Defendants' patients at issue did not receive a settlement over policy limits.  *See* ECF No. 1, ¶¶ 32, 64; ECF No. 1-6 (two settlements over policy limits out of 328 identified patients).  The Complaint simply concludes the claimed damages are directly related to and a natural consequence of the scheme.  *See* ECF No. 1, ¶¶ 65-67.

14.     Although well-pleaded facts are entitled to a presumption of truth, the Court is not bound to accept State Farm's legal conclusion as true.  *See Iqbal*, 556 U.S. at 678.  The Complaint alleges no obligation that Defendants owed to State Farm, much less any contract or other source of duty of Defendants towards State Farm.  As to settlements, the Fifth Circuit has also noted:

> there are a whole host of reasons—other than reliance on reports from the adverse party's doctors, that . . . 'may influence a party's ultimate decision to settle disputed claims in a lawsuit, including the nature of the liability facts, the nature of the damages alleged, the number of parties involved, the perceived propensity of a jury in the forum to return a significant damage award, the level of skill of opposing counsel, the quality of the appearance of the fact witnesses and parties, and the costs associated with continued discovery, trial preparation, and trial itself.'

*See Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 411, n.16 (5th Cir. 2007) (quoting *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 227 (Tex. App.-Houston [1st Dist.] 2004, pet. denied)).  Before State Farm pays any settlement, it has a duty of care to itself and its insureds to adequately prepare and analyze claims.  Defendants' documentation is thus not directly responsible for the settlement outcomes of negotiations with accident victims' lawyers because such discussions and other circumstances particular to each claim are superseding acts which all occurred independently or after State Farm claims to have received Defendants' bills and reports with the demand packages.  State Farm is simply an incidental or indirect party to the alleged fraud,

not the object of it, because any alleged overpayment of settlements was the result of independent actions of third and even fourth parties, specifically State Farm's own adjusters and their settlement negotiations with accident victims' lawyers. *See Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020) ("If some other conduct directly caused the harm, the plaintiff cannot sustain a RICO claim."). State Farm also fails to comply with the prudential standing rule generally prohibiting a litigant from raising another person's legal rights. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 at 126 (2014). Only Dr. Misra's patients are entitled to challenge the medical necessity of his examinations and procedures, not State Farm.

15.     Pursuant to 18 U.S.C. § 1964 (c), a RICO plaintiff only has statutory standing if, and can only recover to the extent that, he has been injured in his business or property by reason of the conduct constituting the violation. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (emphasis added). The Complaint does not plausibly allege State Farm's injuries were caused directly by the alleged fraud of Defendants, and thus were also not caused "by reason of" it. *See Assoc. Gen. Contractors of Cal.*, 459 U.S. at 541, n. 46 (finding no proximate cause in antitrust contexts where the plaintiff's "harm stems most directly from the conduct of persons who are not victims of the conspiracy."). Along with State Farm itself, the conduct directly responsible for State Farm's proposed injury is limited to those unnamed third parties submitting and actually communicating with State Farm during settlement negotiations.

16.     To establish that an injury came about "by reason of" a RICO violation, a plaintiff must show that a predicate offense "not only was a 'but for' cause of his injury, but a proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, (1992). The central question when evaluating proximate causation under RICO is whether the alleged violation led directly to a plaintiff's injuries. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 657 (S.D.

7

Tex. 2016) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  Proximate causation is lacking when the conduct directly causing the alleged harm is distinct from the alleged RICO violation.  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 10-11 (2010).  Links that are "indirect," "too remote," or "purely contingent" are insufficient.  *Hemi*, 559 U.S. at 2.  Instead, State Farm's causal theory is too far attenuated where the alleged RICO violation is submitting fraudulent medical bills and records to non-parties, and the alleged injury is State Farm's self-described overpayments on claims of accident victims. *See Hemi*, 559 U.S. at 11-12 (2010).  State Farm is always in control of deciding whether to settle, as evidenced by the notation of "(C) Claim not paid" in State Farm's own RICO and Demand Appendix which shows State Farm did not pay to settle 97 of the 328 underlying claims.  *See* ECF No. 1-6.

17.     The Supreme Court's reasoning in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), is particularly instructive on the standing requirement for State Farm's RICO claims.  In *Hemi*, the City of New York brought RICO claims against out-of-state cigarette sellers based on the alleged predicate fraud of failing to submit customer information to the state as required for cigarettes sold to New York residents, with the alleged injury from the cigarette sellers being the city's inability to collect back taxes due on those sales.  *Id.* at 4-12.  Like in *Hemi*, State Farm's causal theory over-extends "RICO liability to situations where the defendant's fraud on the third party [Dr. Misra's patient] has made it easier for a fourth party to cause harm to the plaintiff [State Farm]."  *See id.* at 11.  Put simply, Dr. Misra's obligation regarding a patient's medical bills and/or documentation is only to his patients, not State Farm, and State Farm's harm, if any, was directly caused by others, such as the non-party attorneys, and not Defendants.  *See id.*  In sum, State Farm fails to adequately allege plausible standing under Article III and 18 U.S.C. § 1964 (c) because the Complaint fails to demonstrate any concrete injury to State Farm or how Defendants' purported

racketeering activity was the direct and proximate cause of State Farm's claimed injuries.

**B.    State Farm Fails to Plead Predicate Acts of Mail Fraud With Particularity.**

18.    "Rule 9(b)'s particularity requirement applies to the pleading of mail fraud as a predicate act in a RICO case." *Benhamou*, 190 F. Supp. 3d at 657.  Rule 9(b) provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The heightened pleading standard of Rule 9(b) is strict, demanding plaintiffs "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

19.    At a minimum, the "who, what, when, where, and how" of the fraud must be laid out as to each defendant. *WMX Techs., Inc.*, 112 F.3d at 178; *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *see also Gonzalez v. Bank of Am.*, 2011 WL 13261985, at *6 (S.D. Tex. Feb. 20, 2011) ("General allegations, which lump all defendants together and fail to segregate the alleged wrongdoing of one from those of another, cannot meet the requirements of Rule 9(b)."). Additionally, the Fifth Circuit recognizes mail fraud includes "a specific-intent requirement that the defendant knew the scheme involved false representations, or put otherwise, that a culpable defendant acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *United States v. Plato*, 593 Fed. Appx. 364, 369 (5th Cir. 2015) (internal citations and quotations omitted).

20.    Dismissal of Count I is warranted because State Farm's allegations are incapable of establishing a plausible (a) distinction between the RICO enterprise and enterprise persons, (b) separate purpose of the RICO enterprise other than simply to commit mail fraud, (c) scheme to defraud with mail incident to an essential part of the scheme, and (d) specific-intent of Defendants.

     ***i.***      ***State Farm Fails To Sufficiently Allege "Who" the RICO Defendants Are.***

21.     State Farm fails to plead sufficiently particular facts to plausibly show both existence of a RICO enterprise, and the required distinction between the RICO enterprise and RICO enterprise persons.  "To establish liability under § 1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is simply not the same 'person' referred to by a different name." *Koenig v. Aetna Life Insurance Co.*, 2015 WL 12777187, *1 (S.D. Texas May 29, 2015).  A RICO "person" is the defendant. *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (holding a RICO person cannot employ or associate with itself).

22.     Dr. Misra obtained his medical license in 1993 and formed Sanjay Misra, M.D., P.A. in 1996.  *See* No. 1, ¶ 18.  Defendant Sanjay Misra, M.D. is a RICO person.  *See* ECF No. 1, ¶¶ 69-72, 74.  Defendant Sanjay Misra, M.D., P.A. is also a RICO person.  *See* ECF No. 1, ¶ 19. The Complaint states, in pertinent part, that Defendant "Sanjay Misra, M.D., P.A. is a corporation and an 'enterprise' (the "Misra P.A. Enterprise")."  *See* ECF No. 1, ¶ 69.  State Farm alleges Dr. Misra submitted, and caused to be submitted, fraudulent documentation and bills through Sanjay Misra, M.D., P.A. – the RICO enterprise.  *See* ECF No. 1, ¶ 74.  Yet, State Farm only distinguishes Dr. Misra from Sanjay Misra, M.D., P.A. in a few paragraphs of the Complaint.  *Compare* ECF No. 1, ¶ 19, 72, 74, *with* ECF No. 1, ¶ 1, 3, 18, 65, 71.  Otherwise, Defendants are lumped together such that neither have been notified what State Farm claims forms the basis of liability against either.  *See Gonzalez*, 2011 WL 13261985 at *6; *see also Montesano v. Seafirst Comm. Corp.,* 818.F2.d 423 (5th Cir. 1987) ("a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise.").  "The RICO enterprise must be an entity separate and apart from the pattern of activity in which it engages.  The defendant who commits the predicate offenses must also be distinct from the enterprise." *Elliott v. Foufas*, 867 F.2d 877, 881

(5th Cir. 1989) (citations omitted).  Consequently, State Farm fails to include factual allegations in the Complaint to plausibly allege with sufficient particularity the existence of two distinct entities, (1) Defendant Sanjay Misra, M.D., P.A., and (2) the "Misra P.A. Enterprise."

23.     State Farm further fails to plead any facts showing the alleged RICO enterprise of Sanjay Misra, M.D., P.A. had any existence or purpose separate from committing mail fraud. *Crowe v. Henry,* 43.F.3d 198, 205 (5th Cir. 1995) ("an enterprise must have an existence separate and apart from the pattern of racketeering.").  According to the Complaint, "the scheme began at least as early as 2013 and has continued uninterrupted since."  *See* ECF No. 1, ¶ 11.  State Farm claims it was ***the*** target of Defendants' scheme.  *See* ECF No. 1, ¶ 10, 66-7, 74.  The Complaint only identifies State Farm as Defendants' target - not any other insurer or payor.  *See* ECF No. 1, ¶¶ 10, 66, 67.  Without more, a separate purpose predating the period at issue does not plausibly establish a separate purpose for RICO claims.  Even if the Complaint is understood to allege Defendants comprised an "associated-in-fact" enterprise, State Farm's claims are still not sufficient to sustain a RICO Enterprise.  As stated in *Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012), the allegations of State Farm:

> . . . are not capable of establishing that the enterprise treats other, legitimate, patients, *i.e.*, patients whose claims are not fraudulently inflated, Plaintiffs' allegations are not capable of establishing that the association-in-fact enterprise exists for a purpose other than the claimed purpose of 'engag[ing] in a scheme to defraud [insurance companies], through bodily injury claims based on medical billings for unnecessary and unreasonable examinations . . .

*Id.* at \*13.  Thus, State Farm has not alleged any existence or purpose separate from the alleged purpose to commit the predicate act of mail fraud.  As such, State Farm necessarily asserts Defendants are "employed by or associated with" themselves.  Such identity of elements is impermissible for a RICO claim under § 1962(c).  *See Burzynski*, 989 F.2d at 743.

24.     Count I fails as a matter of law because State Farm does not plead a plausible RICO enterprise distinct from the RICO person, and fails to establish the alleged legal enterprise Sanjay Misra, M.D., P.A. exists for a separate purpose other than to commit mail fraud.  *See, e.g., Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 583 (5th Cir. 1992) (affirming dismissal of claim alleging an enterprise consisting of corporate defendant and its field employees).

> ### ii.     *State Farm Fails To Sufficiently Allege "What" Racketeering Activity.*

25.      "Racketeering activity" is defined by predicate acts enumerated in 18 U.S.C. § 1961(1), which includes mail fraud.  State Farm must base its mail fraud allegations on facts capable of establishing: "(1) a scheme to defraud; (2) the use of the mails to execute the scheme; and (3) the specific intent to defraud."  *United States v. Traxler*, 764 F.3d 486, 488 (5th Cir. 2014).  At a minimum, State Farm must allege with the particularity required by Rule 9(b) the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).  Conclusory allegations of mail fraud "with no description of any time, place or contents of the communication" will not suffice.  *See id.*

26.     To support State Farm's allegation that the submission of Dr. Misra's medical bills and documentation constitutes mail fraud, State Farm must sufficiently plead that the use of the mails to seek payment was mail fraud, and thus the claims themselves have to be fraudulent or in furtherance of the fraudulent scheme – neither of which State Farm has alleged with the specificity required by Rule 9(b).  The Complaint only alleges Dr. Misra "submit[ed] and caus[ed] to be submitted fraudulent bills and supporting documentation for evaluations, injections, and related services which either were not performed, were not legitimately performed, or were not medically necessary, which in turn caused settlement checks to be deposited in the U.S. mails by [State

Farm]." *See* ECF No. 1, ¶ 71.  Since the Complaint does not allege Defendants made any claims for payments pursuant to a settlement agreement, State Farm cannot argue Defendants could reasonably expect the use of the mails to execute the scheme.

27.  Attached to the Complaint are hundreds of pages containing bills and corresponding mailings, without any substance or specific representations, which State Farm concludes "comprise the pattern of racketeering activity." *See* ECF No. 1, ¶ 73.  Even with the additional documentation, State Farm does not adequately allege the predicate mail fraud because the Complaint fails to allege facts capable of establishing that the mailings at issue were "incident to an essential part of the scheme, i.e., that completion of the alleged scheme depended in some way on use of the mails." *Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546, at *6 (S.D. Tex. July 3, 2012) (not reported) (citing *United States v. Maze*, 414 U.S. 395 (1974)). State Farm fails to identify the contents of any representations through which Defendants purportedly caused State Farm to either receive any demand package or mail its settlement payments to the accident victims' lawyers. *See Receivable Fin. Co., L.L.C.*, 501 F.3d at 411, n.16 (reversing a jury verdict for fraud and noting, in holding the insurance company had no evidence of actual reliance on misrepresentations because it had no evidence that adjusters relied on the allegedly fraudulent medical records in deciding whether to settle a claim, "an undetermined portion of the claims in question were paid on *judgments*, and there is no evidence as to how such judgments were obtained.") (emphasis in original).  Each of these demand package submissions by nonparties cannot separately qualify as Defendants' predicate mail fraud.

28.  State Farm claims the bills and documentation were fraudulent for every evaluation and medical procedure performed on the patients of Dr. Misra in question.  State Farm takes particular issue with patterns it claims to have divined from Dr. Misra's records and suggests Dr.

Misra is overly aggressive in his treatment recommendations of ESIs and spinal surgeries.  *See* ECF No. 1, ¶¶ 39-61.  But the allegations comprising State Farm's disputes with Dr. Misra's treatments are wholly conclusory and generally vague.  Furthermore, the records State Farm attaches to the Complaint contradict its own contentions of medical necessity.  State Farm's unsupported application of its own standards and opinions on medical necessity and cost of procedures and treatments provided by Dr. Misra to accident victims insufficiently pleads fraud.[3]

29.     To raise its claim that Defendants' medical bills and supporting documentation are fraudulent above mere speculation, State Farm relies almost entirely on statistics.  *See* ECF No. 1, ¶¶ 3, 40, 72.  As an initial matter, State Farm received 71 demand packages relating to claims of automobile accident victims for insurance benefits under State Farm policies submitted before April 2019.  *See* ECF No. 1-6.  Accordingly, State Farm's admitted focus on statistics and patterns in Defendants' medical documentation belies State Farm's own assertion that it "did not discover and should not have reasonably discovered its damages were attributable to Defendants' conduct until April 2019, at the earliest."  *See* ECF No. 1, ¶ 80.  Despite the Complaint's repeated accusations of billed services which were not performed, State Farm includes no facts to support any failure by Dr. Misra to perform services as-billed.  *See* ECF No. 1, ¶ 79.  Nothing in the Complaint questions that these bills and documentation at issue were for real patients receiving real treatment.  State Farm cannot identify a single patient for whom Dr. Misra provided treatment and Sanjay Misra, M.D. P.A. sought payment who did not actually receive an evaluation or treatment for which medical records and bills were submitted for payment.  Consequently, State

---

[3] Indeed, medical literature shows not only that ESIs and spinal surgery are increasingly being used to treat axial neck and back pain, but also that cervical injections do help relieve pain for a majority of studied patients.  *See* Manchikanti L, Cash KA, Pampati V, Malla Y., *Fluoroscopic cervical epidural injections in chronic axial or disc-related neck pain without disc herniation, facet joint pain, or radiculitis* (J Pain Res 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3401988/.

Farm's conclusions of fraudulent medical bills and documentation based on patterns or statistical studies thus "amount to nothing more than speculation, and thus fail to satisfy Rule 9(b)."  *See, e.g., U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

30.     State Farm concludes, without pointing to any recognized standard or authority for support, "Dr. Misra does not perform legitimate examinations of the patients."  *See* ECF No. 1, ¶¶ 3, 40, 72.  But the Complaint does not provide sufficient well-pleaded factual allegations of fraud that, when assumed to be true, state a claim for relief plausible on its face.  Like the "conclusory, vague, and non-specific allegations" in *Allstate Ins. Co. v. Donovan*, CIV.A. H-12-0432, 2012 WL 2577546, at *8 (S.D. Tex. July 3, 2012), the Complaint does not satisfy Rule 9(b)'s particularity requirement to plead mail fraud.  State Farm fails to (a) allege any misrepresentation by Defendants on medical necessity, (b) identify when Defendants received payment for allegedly unnecessary medical tests and procedures Defendants ordered or provided, and (c) show a benefit Defendants gained by virtue of participating in the alleged fraud.  The Court is not required to blindly follow such labels, legal conclusions, or naked assertions devoid of further factual enhancement, couched by State Farm as factual allegations regarding claimed illegitimate diagnoses and treatments of neck and back pain.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

31.     Likewise, the Court is not bound to accept "conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364, n.5 (5th Cir. 2003).  Throughout the Complaint, State Farm improperly attempts to impose its own standards without any reference to legal or medical authorities whatsoever.  *See, e.g.*, ECF No. 1, ¶¶ 23-38.  Yet, State Farm admits the examinations Dr. Misra performed on patients included taking their history, performing physical exams,

diagnosing, and arriving at a treatment plan, "all of which are documented in his evaluations."  *See* ECF No. 1, ¶ 39.  That Dr. Misra treated more patients requiring a higher level of interventional procedures than what State Farm believes he should provide is nothing more than rank speculation. *See* ECF No. 1, ¶ 51.  And for a patient suffering from axial lower back pain, State Farm's accusation that Dr. Misra performed an unjustified ESI is likewise meritless.  *See* ECF No. 1 ¶ 46.

32.     What State Farm does not disclose is how deposition testimony from the transcripts included with the Complaint demonstrates, contrary to State Farm's allegations, Dr. Misra performed all evaluations and procedures reasonably and with due care, as medically necessary, within his authority as a physician, and recorded such pertinent details in medical documentation. For example, one of Dr. Misra's patients testified she complained of "neck pain radiating to her arms with numbness in her hands" and low back pain radiating to her legs.  *See* ECF No. 1-25, 42:10-20.  Thus, the ESI procedures recommended by Dr. Misra and criticized by State Farm fully comport with common clinical indications for the same: "nerve-related pain radiating from the neck into the shoulders or arms or from the lower back into the buttocks and legs."  *See* ECF No. 1, ¶ 24.  State Farm has failed to specifically allege any facts to the contrary, dispositive of fraud.

33.     The Complaint provides no factual basis for State Farm's contention that the services provided were unnecessary, relying instead on conclusory allegations and the implication that some of the treatment must have been unnecessary simply because the volume recommended and/or provided by Defendants is more than what State Farm would expect to see.  *See* ECF No. 1, ¶¶ 26, 29.  Likewise, State Farm merely concludes without any explanation or evidentiary support that bills submitted in conjunction with medical services provided by Dr. Misra were "improperly unbundled."  *See* ECF No. 1, ¶¶ 9, 63.  But this too is insufficient to satisfy Rule 9(b). Accordingly, dismissal of Count I is warranted because State Farm's conclusory and wholly

unsupported allegations that Dr. Misra prescribed or performed medically unnecessary procedures fail to satisfy the particularity required by Rule 9(b).

### iii.     *State Farm Fails To Adequately Allege the Specific-Intent of "Why."*

34.     "Although intent can be averred generally under Rule 9(b), a RICO mail fraud averment must nonetheless provide some factual basis for conclusory allegations of intent, which must, in turn, give rise to a strong inference of fraudulent intent." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995). State Farm's Complaint entirely fails to plausibly demonstrate that Dr. Misra acted "knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself," as it must demonstrate for purposes of mail fraud. *See Plato*, 593 Fed. Appx. at 368.

35.     Count I fails without allegations detailing Defendants' role in the alleged fraud or indicating any conscious behavior on Defendants' part. The one instance in which State Farm attempts to show Dr. Misra's "attempt" to inflate medical bills stems from an excerpt of deposition testimony in which patient A.M. states Dr. Misra said "no shot, no money" in reference to recommended treatment. *See* ECF. No. 1 ¶ 55. Notably absent from the Complaint is any mention of the preceding ten lines of testimony indicating patient A. M. was suffering from the precise symptoms State Farm alleges are indications supporting the medical necessity of an ESI. *See* ECF No. 1-25, 42:10-20 ("She has neck pain radiating to her arms with numbness in her hands. She also has low back pain radiating to her legs."). It is also worth noting the testimony of A. M. immediately following the excerpt used by State Farm, which casts doubt on whether Dr. Misra actually said, "no shot, no money." *See* No. 1-25, 43:10-25 ("this wasn't the doctor").

36.     In *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015), the Fifth Circuit found from circumstantial evidence that the defendants' participation in a scheme to defraud

insurance companies was enough to prove intent for mail fraud.  But importantly for that case, the circumstantial evidence in *Plambeck* clearly established plausible participation in the mail fraud by those defendants, who were not only owners and managers of the enterprise, but were also directly involved with structuring their scheme by actively recruiting patients. *Id.*  In stark contrast to the allegations here of State Farm, it was the defendants in *Plambeck* who filed third-party claims with the at-fault party's insurer. *Id.* at 671.  State Farm's Complaint does not allege specific circumstances of how Dr. Misra structured, trained, or otherwise participated in the alleged scheme, so fraudulent intent cannot be plausibly inferred.

37.     Finally, the Complaint cannot comply with the stringent Rule 9(b) standard of fraud pleading because State Farm has not identified a single instance how or why it was actually misled by any bill or claim submitted by the doctor.  Since State Farm cannot establish Defendants knew of a scheme, much less that the scheme involved false representations, the Complaint fails to allege with sufficient particularity that Dr. Misra plausibly acted with the specific intent to deceive.

## II.     MONEY HAD AND RECEIVED CLAIMS FAIL AS A MATTER OF LAW.

38.     For Count II of the Complaint, State Farm brings a claim for money had and received.  The elements of this claim are that the "defendant holds money which in equity and good conscience belongs to [the plaintiffs]." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004).  Accordingly, to state a claim for money had and received, State Farm must plead sufficient facts to show that Dr. Misra and Sanjay Misra, M.D., P.A. each received the money at issue and that the money at issue in equity and good conscience belongs to State Farm. *See Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675–76 (W.D. Tex. 2019); *Luppino v. York*, 2017 WL 8161008, at *8 (W.D. Tex. Nov. 27, 2017).

39.     In ruling on a motion to dismiss, a "court should not 'strain to find inferences

favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC*, 401 F.3d at 642.  In the same manner, the Court cannot assume a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Assoc. Gen. Contractors of Cal. v. Cal. St. Council*, 459 U.S. 519, 526 (1983)).  Here, State Farm generally alleges it paid "to settle the BI and UM Claims at issue." *See* ECF No. 1, ¶ 67.  But altogether absent from the Complaint is anything to suggest State Farm paid any settlement money at issue to Dr. Misra or Sanjay Misra, M.D., P.A.  *See* ECF No. 1, ¶¶ 76-78. State Farm does not even allege any of the automobile accident victim-plaintiffs either were paid by State Farm or paid Dr. Misra or Sanjay Misra, M.D., P.A.  The Complaint merely concludes "Defendants received payments on their fraudulent bills" from payments made by State Farm to settle BI and UM claims.  *See* ECF No. 1, ¶ 62.

40.     Accordingly, State Farm fails to adequately allege a plausible inference that either Defendant actually received any part of the settlement money at issue.  This complete lack of explanation about how money and communications were exchanged between the unnamed third-parties, the accident victims' lawyers, and Defendants and/or what money, if any, ultimately went to Defendants, is grounds for dismissal.  *See Adams v. Nissan N. Am., Inc.*, 2018 WL 2338871, at *10 (S.D. Tex. May 4, 2018).  State Farm has therefore not stated its allegations with enough clarity to enable the Court or Defendants to determine whether Count II is sufficiently alleged.

41.     State Farm's claim for money had and received also fails because the chain of events alleged in the Complaint is too attenuated from the alleged "scheme" or any of the alleged activities by Defendants to create a plausible inference that any settlement money in equity and good conscience belongs to and should be returned to State Farm.  *See Segner v. Sinclair Oil &*

*Gas Co.*, 2012 WL 12885055, at *21 (N.D. Tex. June 4, 2012) (granting motion to dismiss money had and received claim where the alleged chain of events regarding the transfer of the money at issue was "too attenuated" from the defendants' activities to state a claim). That is, even if the factual allegations asserted in the Complaint are taken as true, State Farm has failed to assert more than mere conclusory allegations that the money at issue "in equity and good conscience belongs to and should be returned to State Farm Mutual and State Farm County." *See* ECF No. 1, ¶ 77.

42.     Even assuming State Farm sufficiently pleaded money received by Defendants, the Complaint fails to sufficiently allege any money received should equitably belong to State Farm because it fails to identify any particular fraudulent or non-existent treatment. As is supported by the Complaint, the services and procedures of Dr. Misra provided benefits to the accident victims coming in to see him. *See* ECF No. 1, ¶ 57. If patients received a benefit from their initial and subsequent visits with Defendants, then any remuneration for actual services Defendants provided their patients *does not equitably belong to State Farm*, but to Defendants. Dr. Misra's patients benefitted from procedures relieving their pain, so State Farm fundamentally fails to allege facts to adequately support a plausible inference that money Defendants received in connection with State Farm settlements, in equity and good conscience, belongs to State Farm over Defendants.

43.     Additionally, State Farm admits on its own accord that it settled all claims within policy limits or rarely exceeding policy limits. *See* ECF No. 1, ¶¶ 32, 64. State Farm implies that it complied with all applicable statutes governing insurers' responsibility to settle claims and does not make any connection that its duty to settle was affected or influenced by Defendants' warranted conduct. State Farm fundamentally fails to allege sufficient facts in the Complaint to support a reasonable inference that money Defendants received in connection with settlements paid by State Farm, in equity and good conscience, belongs to State Farm over Defendants. Given the lack of

sufficient factual allegations contained in the Complaint regarding both essential elements of State Farm's claim for money had and received, Count II should be dismissed.

## CONCLUSION

For the foregoing reasons, both claims State Farm attempts to assert against Defendants should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on the grounds that Plaintiffs fail to allege facts to plausibly establish standing for RICO claims, fail to plead fraud with particularity to state any claim upon which relief may be granted under 18 U.S.C. § 1962(c), and fail to allege facts to plausibly establish both elements essential to state a claim upon which relief may be granted for money had and received.

WHEREFORE, Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety and enter an order dismissing Plaintiffs' claims with prejudice.


DATE:        August  18, 2022

Respectfully submitted,

By: _Ricardo G. Cedillo_
        Ricardo G. Cedillo
        Texas Bar No. 04043600

**DAVIS, CEDILLO & MENDOZA, INC.**
755 E. Mulberry Ave., Ste. 250
San Antonio, Texas 78212
Telephone:     210.822.6666
Facsimile:      210.660.3795
Email:          rcedillo@lawdcm.com

**ATTORNEYS FOR SANJAY MISRA, M.D.
AND SANJAY MISRA, M.D., P.A.**

## **CERTIFICATE OF CONFERENCE**

Defendants, as movants, complied with the Standing Order in Civil Cases Assigned To Judge Jason Pulliam.  Defendants note State Farm, the non-movant, did not timely amend its pleading and/or the amended pleading is still deficient.

## **CERTIFICATE OF SERVICE**

I certify that on this 18th day of August 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

_/s/Ricardo G. Cedillo_

RICARDO G. CEDILLO