# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and
STATE FARM COUNTY MUTUAL
INSURANCE COMPANY OF TEXAS,**

       *Plaintiffs*,

**v.**                                      **Case No. SA-22-CV-806-JKP**

**SANJAY MISRA, M.D.; and
SANJAY MISRA, M.D., P.A.,**

       *Defendants*.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 85). Pursuant to Fed. R. Civ. P. 56, Defendants Sanjay Misra, M.D., ("Dr. Misra") and Sanjay Misra, M.D., P.A. (collectively "Defendants") seek dismissal of all claims in this case. Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm County Mutual Insurance Company of Texas ("Plaintiffs" or "State Farm") have filed a response (ECF No. 92) and Defendants have filed a reply (ECF No. 104). In addition, Plaintiffs have filed a surreply (ECF No. 110) with leave of Court. The Court previously denied a request for oral argument, (ECF No. 109), and now finds oral argument unnecessary to resolve the motion. After considering the motion, related briefing, relevant pleadings, submitted evidence,[1] and applicable law, the Court grants the motion in part.

---

[1] Both sides have submitted exhibits with their briefing. With their motion, Defendants provide an appendix (ECF No. 85-1) containing four exhibits (Exs. A through D). Their reply contains a fifth exhibit (Ex. E). *See* ECF No. 104-1. They also provide excerpts from a motions hearing as a separate attachment. *See* ECF No. 105. With their response, Plaintiffs provide seventy-seven exhibits, including their list of exhibits. *See* ECF Nos. 92-1 through 92-77. Plaintiffs also submit numerous unredacted filings and exhibits under seal. *See* ECF Nos. 93, 93-1 through 93-54, 94, 94-1 through 95-55, 95, and 95-1 through 95-55. Although Plaintiffs group their exhibits into Exhibits A through K, with subparts A-1, B-1 through B-145, and C-1 through C-60, the Court will refer to them by ECF No. for ease of reference and to avoid confusion. Including a list of exhibits, Plaintiffs provide another seven exhibits with their surreply. *See* ECF Nos. 110-1 through 110-7.

## I. PRELIMINARY PROCEDURES AND OBJECTIONS

Defendants set out eleven paragraphs of undisputed facts in their motion. *See* Mot. ¶¶ 1–11. This complies with the undersigned's Standing Order, which provides:

> The facts set forth in any motion shall be stated in separately numbered paragraphs with citation to a particular pleading or other part of the record supporting the party's statement. All positions and statements contained in the body of any motion or any responses must contain specific cites to the record supporting the party's statement. The Court will not search the record for evidence and may not consider any evidence that is not specifically cited in the parties' briefs.

*See* Standing Order in Civil Cases (ECF No. 9) ¶ 1a.

Rather than respond directly to whether these facts are contested, Plaintiffs provide their own "Statement of Facts," Resp. ¶¶ 1–36, with objections asserted generally against Defendants' undisputed facts, Resp. at 15 n.6 and 21. While the response may technically comply with the terms of the above Standing Order, it misses the spirit of the Standing Order—to provide the courts (both this one and any reviewing court) and the parties clarity regarding the facts that are not in dispute. The Court will discuss this a bit more later in this section.

In reply, Defendants note Plaintiffs' lack of objection to nine of their eleven paragraphs of undisputed facts and naturally proceed with restating those nine paragraphs as undisputed. Reply ¶¶ 3–12. Defendants also note that Plaintiffs did not object to the underlying exhibits supporting their facts, including two declarations with expert reports of Hussein Musa, M.D. (Ex. A, ECF No. 85-1 at 3–15) and Shawn A. Hayden, M.D. (Ex. B, ECF No. 85-1 at 17–26) and five patient affidavits (Ex. C, ECF No. 85-1 at 28–37). Relying on Fed. R. Civ. P. 56(e)(2) through a cited case, Defendants submit that the Court should consider the unaddressed facts as undisputed for purposes of summary judgment. *Id.* ¶ 3. Defendants then state that they do not dispute numerous facts set out by Plaintiffs and identify these undisputed facts in separate paragraphs. *See id.* 13–26.

In their surreply, Plaintiffs question Defendants' recitation of undisputed facts as "ignor[ing] the detailed counter-statement of facts" in their response and their "objections to many of

Defendants' 'factual statements.'" Surreply at 1. In twelve, unnumbered bullet points Plaintiffs respond to contentions of Plaintiffs. *See id.* at 1–3. Plaintiffs conclude that "Defendants' purported 'undisputed facts' do not hold up under scrutiny." *Id.* at 3. Plaintiffs then address Defendants' asserted objections, *id.* at 3–10, before addressing perceived new arguments raised in reply, *see id.* at 10–20.

Through their response, Plaintiffs create unnecessary uncertainty as to what facts are disputed merely by the way they respond to the asserted undisputed facts of Defendants. The better practice is for a responding party to directly contest or concede asserted uncontested facts on a paragraph-by-paragraph basis if possible and then state the respondent's own uncontested facts on a paragraph-by-paragraph basis so that the movant can reply on a paragraph-by-paragraph basis in reply. Such practice provides more definitiveness as to which facts are in dispute. While researching matters related to this case, the Court reviewed a case involving State Farm that it finds exemplifies the spirit of the Standing Order (ECF No. 9) issued in this case.

"With respect to summary judgment motions," the Honorable United States District Judge Sean Cox from the Southern Division of the Eastern District of Michigan has "practice guidelines" that are consistent with Fed. R. Civ. P. 56(c) and incorporates the following requirements:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record . . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

*State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2021 WL 3489702, at *1 (E.D. Mich. Aug. 9, 2021). While the Standing Order in this case is not as detailed, the spirit of the Standing Order encompasses these "best practices" that legal practitioners should strive to comply by including a separate section (not a separate document as required by Judge Cox) within the motion, response, or other briefing.

Here, Plaintiffs commence their response with their own "Statement of Facts," which is not a paragraph-by-paragraph recitation of undisputed facts with supporting evidence. They do not address Defendants' recitation of undisputed facts until footnote six on page fifteen. And that footnote is their first asserted objection to Defendants' undisputed facts. They revisit these matters on page twenty-one. As discussed in the next subsection, they assert no valid objection.

This is not the first time State Farm attorneys have had issues with summary judgment briefing. *See State Farm Mut. Auto. Ins. Co. v. Complete Pain Sols., LLC*, No. 4:20-CV-2606, 2024 WL 3488256, at *2–3 (S.D. Tex. July 18, 2024). In a case quite like this one, the Southern District of Texas found merit in two overlapping issues raised by the defendants: (1) not referencing some exhibits or subparts of exhibits in the response to the motion for summary judgment and (2) referring to an exhibit without specificity. *See id*. at *2. The Court had some cogent statements that may apply equally here:

> The first point concerns the fact that some exhibits or subparts of exhibits are not referenced anywhere in Plaintiffs' response. It is well settled that a court is under no duty to sift through hundreds, or in this case, thousands of pages of exhibits to find evidence to support a parties' position. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).
>
> Nevertheless, the failure to refer to an exhibit does not render the exhibit objectionable, it merely means the Court may or may not consider it based upon whether the Court finds the summary judgment evidence sufficient or finds it at all. The party proffering the exhibit is running the risk that the Court might not locate the evidence upon which that party relies.
>
> It is not the Court's error if a party elects not to be specific. This same rule applies when a party refers the Court to an exhibit that is lengthy and does not

expressly supply the Court with a page cite. That violates this Court's rules, and more importantly, the Fifth Circuit's case law. Nevertheless, it does not make the exhibit improper—it just makes the brief poorly drafted, and it may ultimately cause that party to lose the motion. It is not the duty of the Court to search the record for specific evidence that may raise a fact issue.

*Id*. The Court also criticized counsel for not identifying "the controverting evidence" or for identifying the evidence too generally:

Most advocates would tell the Court what the controverting evidence is, or at least give the Court a hint. Here, for some reason counsel decided not to; and, thus, even with page citations, the Court must somehow figure out what the controverting evidence is. When one follows the only specifically cited "evidence," there is a deposition excerpt that consists of four questions—all of which were leading and to which Defendants rightfully objected. While the answers to these questions did stand for the proposition for which they were cited, for this Court to consider them, the Plaintiffs must hope this Court makes the determination that the evidence is capable of being presented in an admissible form, despite the manner in which it was elicited. The remainder of the reference is to seven different exhibits from which apparently the Court is free to draw whatever conclusions it may or may not. This is a shoddy and haphazard approach. Most importantly, it needlessly taxes the very limited judicial resources available to this Court. Plus, this approach to responding to a summary judgment motion is far from effective.

*Id*. at *3.

This Court concurs that the criticized approach is far from effective and consumes valuable judicial time at a greater rate than effective presentations do. This case also has some evidence identified too generally. And oftentimes, Plaintiffs cite to numerous exhibits when the exhibits individually only apply to part of the text to which they are cited. With voluminous exhibits, the Court understands the difficulties faced by counsel and courts alike. Still, these briefing issues deserved some notation, even if only to aid future cases. With this initial procedural commentary, the Court moves on to asserted objections.

**A. Plaintiffs' Objections**

Plaintiffs premise their objections in footnote six on Defendants' citation to sources that are not themselves admissible evidence. *See* Resp. at 15 n.6. Further, Plaintiffs object to the purported facts set forth in ¶¶ 9 and 10 of the motion under Fed. R. Evid. 403 (excluding relevant

evidence for various reasons) and 802 (hearsay). *Id*. Similarly, Plaintiffs object to purported facts set forth in ¶¶ 28 and 29 of the motion on grounds that Defendants fail "to offer actual evidence to support" the facts by either citing no source of evidence or citing to the complaint, their own dismissed counterclaims, their own expert reports, or declarations from five patients. *Id*. at 21.

Plaintiffs' focus on present admissibility is misplaced. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017). This is so because following "a 2010 revision to Rule 56, materials cited to support or dispute a fact need only be capable of being presented in a form that would be admissible in evidence." *Id*. (citation and internal quotation marks omitted). Thus, "it is not dispositive whether the [cited materials] in their current form are admissible in evidence." *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016).

While Fed. R. Civ. P. 56(c)(4) requires affidavits and declarations to "set out facts that would be admissible in evidence," Rule 56(c)(1)(A) "expressly contemplates that affidavits are only one way to 'support' a fact; 'documents . . . declarations, [and] other materials" are also supportive of facts." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017). Although Rule 56(c)(1)(A) requires citation to "particular parts of materials in the record," the rule broadly allows citation to numerous listed items of record.

The import of this rule is the requirement of specificity—the citation must be to a particular part of the cited material. *See Macias v. Bexar Cnty.*, No. SA-21-CV-00193-JKP, 2024 WL 1161729, at *6 (W.D. Tex. Mar. 18, 2024). A failure to cite "a particular page or paragraph" may result in the Court considering assertions of  fact to be "conclusory or unsubstantiated assertions . . . without evidence in support," which "are not competent summary judgment evidence and are insufficient to create a genuine dispute of material fact." *Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 540 (N.D. Tex. 2018) (citing *Eason v. Thaler*, 73 F.3d 1322,

1325 (5th Cir. 1996) (per curiam); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).

Plaintiffs may disapprove of Defendants citing to the complaint and other materials in the record, but Rule 56(c)(1) provides avenues for asserting that the facts are genuinely in dispute and Rule 56(c)(2) permits parties to "object that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Only "if the movant bears the burden of proof" on a claim or defense, must it come forward with evidence that establishes the claim or defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the movant does not have the burden of proof, "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (omitting internal quotation marks). Once the movant carries its burden, the burden shifts to nonmovant to "to present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In carrying its burden, the nonmovant "cannot rely on the facts in its unverified complaint, but must point to evidence in the record sufficient to establish the alleged facts." *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991) (footnote omitted). Nothing prevents a defendant from relying on the pleadings of the plaintiffs so long as the cited material can be presented in admissible form at trial.

To support an assertion "that a fact cannot be or is genuinely disputed," Plaintiffs may cite to their own "particular parts of materials in the record." *See* Rule 56(c)(1)(A). Additionally, under Rule 56(c)(1)(B), Plaintiffs may "show[] that the materials cited do not establish the absence or presence of a genuine dispute." Alternatively, under Rule 56(c)(1)(B), Plaintiffs may show that Defendants "cannot produce admissible evidence to support the fact." This latter showing relates to objecting that a fact is not supported by admissible evidence as permitted by Rule 56(c)(2). This objection is narrower than objecting that the cited material itself is inadmissible as evidence. The

objection under Rule 56(c)(2) goes to whether the party proffering evidence can present the evidence "in a form that would be admissible in evidence."

The objection permitted through Rule 56(c)(2) avoids "the use of materials that lack authenticity or violate other evidentiary rules." *Lee*, 859 F.3d at 355. It "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. But like trial, that burden is not placed on the proponent until the party opposing the evidence properly asserts the objection and identifies the basis for it.

Here, Plaintiffs do not properly object under Rule 56(c)(2). They make no attempt to address whether Defendants "cannot produce admissible evidence to support" their purported undisputed facts. Plaintiffs merely complain that the cited materials are inadmissible in their current form. The stated objection is insufficient to transfer the burden to Defendants "to show that the material is admissible as presented or to explain the admissible form that is anticipated."

Further, whether cited material is or contains hearsay does not make it excludable on summary judgment unless the party opposing the evidence shows that the proponent cannot produce it in admissible form. Similarly, the Court will not exclude evidence from consideration merely because a party asserts Fed. R. Evid. 403 without making a showing that the probative value of the evidence is substantially outweighed by a danger listed by the rule.

For these reasons, Plaintiffs have asserted no viable objection against Defendants' assertions. While their objections do not preclude consideration of the cited materials, the Court will naturally consider Plaintiffs' own submission of undisputed facts when setting out the background facts in the light most favorable to Plaintiffs, as the nonmovant. Within the context of the background facts, the Court will also consider the objections and clarifications of Defendants'

statement of undisputed facts as Plaintiffs set out in their surreply. *See* Surreply at 1–3. Such consideration may be expressly mentioned or implicit within the background section.

## B. Defendants' Objections

Defendants assert various objections against Plaintiffs' 246 exhibits. *See* Reply ¶¶ 27–48. They premise their first objection on Fed. R. Civ. P. 56(c)(2) while contending that Plaintiffs do not present proffered evidence in a form that would be admissible. *See id.* ¶ 27. As explained in the preceding subsection, this contention misses the importance of Rule 56(c)(2). The focus of that rule is on whether the evidence could be proffered in an admissible form, not that it has been. The Court will not belabor this point. But unless Defendants address Plaintiffs' ability to produce admissible evidence this objection like that of Plaintiffs' similar objection is not sufficient to shift the burden to the proponent of the evidence "to show that the material is admissible as presented or to explain the admissible form that is anticipated."

Defendants also seek to strike certain proffered evidence from the record as incompetent summary judgment evidence. *See id.* In five bullet points, the seek to strike the following evidence for the reasons stated:

> (1) Exhibits E, F, G, and I (ECF Nos. 92-71 through 92-75) because the declarations are from four witnesses who Plaintiffs did not disclose in discovery.
>
> (2) Exhibits C-10, C-52, and C-53 (ECF Nos. 92-19, 92-61, 92-62) as inserting defense counsel's own improper and unfounded expert testimony. These exhibits are medical records and billing summaries that also contain commentary from counsel in red.
>
> (3) Various identified exhibits produced by third parties but lacking a sponsoring competent witness with personal knowledge to lay a proper foundation.
>
> (4) Unspecified exhibits that are hearsay or contain hearsay without establishing any applicable exception.
>
> (5) Unspecified exhibits with other evidentiary defects such as relevance (Fed. R. Evid. 402), authentication (Fed. R. Evid. 901), and foundation (Fed. R. Evid. 602).

*See id.* In later paragraphs, Defendants seek to strike many other exhibits, including a declaration

of Plaintiffs' expert, Dr. Robert Hurley (Ex. A, ECF No. 92-2) and a declaration of an employee of State Farm, Kristyn Brouwer (Ex. B, ECF 92-4). *See id.* ¶¶ 29–32.

As discussed in detail later, Plaintiffs need more than the after-the-fact opinion of their expert to proceed with their claim asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Thus, the admissibility of their other evidence may have greater importance at this juncture. Regardless, the Court declines to exclude Dr. Hurley's declaration and his referenced expert report. Notably, the Magistrate Judge denied a prior motion to exclude and/or limit the testimony of Dr. Hurley and stated that the motion

> is **DENIED WITHOUT PREJUDICE** to Defendants' ability to challenge, by way of motion in limine or objection at trial, Dr. Hurley's opinions as to Dr. Misra's state of mind. The Court finds that the other issues raised by Defendant[s], including Dr. Hurley's comparative expertise and potential bias, go to the weight rather than the admissibility of his testimony, and may be addressed through cross-examination.

*See* ECF No. 100 at 2. This ruling came about a month before Defendants filed their reply and objected to summary judgment evidence. As Defendants' current objection goes to the reliability and qualifications of Dr. Hurley, *see* Reply ¶¶ 29–30, rather than to his opinions about Dr. Misra's state of mind, the Court agrees with the Magistrate Judge that Dr. Hurley's opinions should not be excluded and are thus properly considered on summary judgment.

As for opinions about Dr. Misra's state of mind, the Court shares the Magistrate Judge's concern that such opinions are improper. At a hearing on the motion to exclude, the Magistrate Judge discussed repeated references to predetermined diagnoses, predetermined prescribed treatment, predetermined treatment decisions, and other opinions that "go to Dr. Misra's state of mind." *See* ECF No. 103 (Tr. of H'rg) 75:17–23. The Magistrate Judge stated:

> How on earth can your expert testify to his state of mind, whatever his expertise is? And that is, I'll be very frank, those are the most damning things he says. If that's the stuff that he says to a jury, that's going to say this is a bad guy who is doing this for bad reasons. Do you have a basis upon which that sort of testimony can be admitted? I'll be frank, that's the thing I'm very concerned about in this motion. I

don't even know if it's directly, but the whole thing is being put before me, I've got to look at it from Judge Pulliam's perspective. Reading the mind of the defendant is one of those things I'm very concerned about.

*Id*. 75:23–76:9. He later stated

I'm very concerned about this issue of trying to plum the motives, intent, feelings, designs of the defendant, in other words, testifying as to his state of mind based on a record review, that's of great concern to the Court. I can't imagine – that's the sort of testimony that would strike me as going far beyond the knowledge of an expert or anybody else. You can't talk about what's in somebody else's mind, you can talk about what you can see is my concern.

*Id*. 82:20–83:7. At this stage, the Court certainly will not allow opinions about Dr. Misra's state of mind to be presented as a factual matter. And based on what it has seen on this matter thus far, such opinions do not appear proper at trial.

Defendants object to the Declaration of Brouwer, ECF No. 92-4 on grounds that (1) she cites to a summary chart that is not an accurate summary and (2) Plaintiffs rely on the declaration to support their position that Dr. Misra conducted fraudulent examinations and did not conduct legitimate examinations of patients. Reply ¶ 32. That Plaintiffs make arguments based in part on the declaration as support does not affect the admissibility of the document. Defendants' primary objection is to the accuracy of the summary chart, but they make no attempt to show any discrepancy between the original records and the summary. An inaccuracy objection fails in such circumstances. *See Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982). While "summaries must 'accurately reflect the underlying records or testimony,' they cannot be excluded simply because they *might* be inaccurate." *Right of Way Maint. Co. v. Gyro-Trac Inc.*, 303 F. App'x 229, 230 (5th Cir. 2008) (per curiam) (quoting *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000)).

Defendants object to various exhibits attached to a declaration of defense counsel (Exhibit C) because the exhibits are (1) hearsay; (2) lack foundation for an exception to hearsay; (3) lack sponsoring witness with personal knowledge; or (4) improperly insert a narrative from counsel

through notations in red. Reply ¶¶ 33–35. The Court has no need to rely on the red commentary included on some exhibits, which renders that objection immaterial. Moreover, with the objection being asserted solely against the added commentary, the Court has no doubt that Plaintiffs would be able to present the evidence in admissible form by deleting the added commentary. The lack of a foundation laying witness is precisely the sort of evidentiary deficiency that parties may fix at trial. Defendants, furthermore, do not argue that Plaintiffs cannot present the evidence in admissible form only that they have not done so here. All these objections are overruled.

Defendants next object to portions of declarations of Plaintiffs' claims personnel. Reply ¶¶ 37–39 (Exs. D, H, and J), 41–44 (Exs. E, F, G, and I). They also object to portions of a declaration from a State Farm investigative unit manager. *Id*. ¶¶ 46–47. The Court has had no reason to consider this evidence and thus finds the objections moot. Further, for Exhibits E, F, G, and I, Defendants partially "complain about undesignated witnesses acting as declarants in the Plaintiffs' response," but "at this stage, the Court is more focused on the content of the proof"; thus making "the alleged failure of the Plaintiffs to properly disclose an individual" more appropriate at a later hearing, rather than simply disregarding the exhibits. *State Farm Mut. Auto. Ins. Co. v. Complete Pain Sols., LLC*, No. 4:20-CV-2606, 2024 WL 3488256, at *2 (S.D. Tex. July 18, 2024).

Despite their objections, Defendants do not dispute numerous facts set out by Plaintiffs. *See* Reply ¶¶ 13–26. Plaintiffs also seek to clarify or correct these facts. *See* Surreply at 2–3.

## II. BACKGROUND[2]

Plaintiffs are insurance companies. Dr. Misra is a Texas-licensed physician who provides medical services to patients in San Antonio, Texas. He is president of Defendant Sanjay Misra, M.D., P.A., a Texas professional association ("Misra, P.A."). Defendants provide pain

---

[2] The factual background is uncontested unless otherwise noted. The Court considers disputed facts in the light most favorable to the non-movant as required through the summary judgment process.

management treatments to patients, including, but not limited to, those who have been injured in motor vehicle collisions by drivers that Plaintiffs insure.

The parties disagree about the legitimacy and need for Defendants' medical treatment rendered to the insureds. And Plaintiffs' expert often speaks in terms of pretext, predetermined diagnoses, credibility, and design. But as questioned by the Magistrate Judge, and discussed above, the Court will not accept such evidence as fact. This contrasts with the expert stating that Dr. Misra's evaluations are insufficiently documented. As alleged by Plaintiffs, and agreed to by Defendants, Dr. Misra's physical exams reflect patients exhibiting tenderness or pain with soft tissue palpitations, motor strength deficits, and decreased or diminished sensation in the affected area. Dr. Misra documents his examinations in typewritten reports. He documents patient complaints and findings to support his diagnoses for patients with back or neck conditions suffering from serious disc-related injuries, which he typically labels as intervertebral disc displacement and/or disc herniations. Plaintiffs characterize these diagnoses as noncredible.

For patients involved in auto accidents complaining of pain from spinal or musculoskeletal injuries, treatment plans should generally start with conservative care, such as medication, chiropractic care, and/or physical therapy, which may benefit patients by relieving their symptoms and even healing their injuries. But when patients' symptoms are not relieved through conservative care, other treatment may be appropriate, including injections or other procedures designed to reduce pain and symptoms caused by inflammation, nerve irritation, or other conditions.

If Dr. Misra's patients do not experience any durable pain relief from steroid injections, he provides them with two options: undergo spinal surgeries or live with the pain. While the parties dispute whether Dr. Misra expects to be paid for his services by his patients, he issued bills for services rendered and sent them to attorneys who referred the patients. His patients move forward with treatment, choosing their own course of treatment, whether that includes epidural steroid

injections ("ESI"), surgery, or other treatment. It is an accepted industry practice for medical prac-

titioners, such as Defendants, to accept assignment of a patient's right to payments from insurers

under letters of protection. Furthermore, Plaintiffs settled—within policy limits—ninety nine per-

cent of the settlements they now retroactively dispute.

Plaintiffs assert two claims in this case. *See* Compl. at 28-31. They first assert a federal

claim against Dr. Misra under RICO, 18 U.S.C. § 1962(c). *See id*. ¶¶ 68-74. Then they assert a

Texas claim against both Defendants for money had and received. *See id*. ¶¶ 75-80. They seek

RICO damages for 183 patients. Resp. ¶ 33.

Although at this stage of the litigation, the Court is concerned with facts rather than alle-

gations, it is helpful to review the allegations in the complaint to place Plaintiffs' claims in per-

spective. They specifically allege that Dr. Misra submitted fraudulent medical bills and records

because:

> (a) Dr. Misra does not perform legitimate examinations of his patients;
>
> (b) patterns in the findings and diagnoses within the examination reports ("Evaluations") prepared by Dr. Misra prior to recommending injections are not credible and serve as pretext to support their predetermined recommendations for medically unnecessary ESIs for nearly all patients reporting neck and/or back pain;
>
> (c) the injections Dr. Misra recommends and purportedly performs are not recommended and performed because they are medically necessary, but rather to substantially inflate the severity and potential value of the patients' claims;
>
> (d) the boilerplate operative reports ("Operative Reports") prepared by Dr. Misra for the ESIs he purportedly performs are not credible based upon patterns in the patients' diagnoses and responses to the ESIs; and
>
> (e) the surgical recommendations made by Dr. Misra are not recommended because they are medically necessary, but rather to substantially inflate the severity and potential value of the patients' claims.

Compl. ¶ 3 (omitting citations to exhibits). Plaintiffs further allege that to facilitate the scheme,

Defendants:

(a) prepare fraudulent Evaluations to create the appearance patients suffered serious injuries that warrant ESIs, often to more than one spinal region;

(b) purportedly perform medically unnecessary injections;

(c) prepare bills from Misra P.A. with typical charges of $499 for the initial examinations and typical charges of at least $3,300 for each ESI;

(d) often recommend patients undergo surgeries, which are estimated to cost in excess of $50,000 (not including fees for anesthesia and related items Dr. Misra estimates cost an additional $50,000); and

(e) provide their fraudulent documentation and bills to the PI Attorneys representing the patients in BI Claims and UM Claims who, in turn, submit the documentation and bills to State Farm Mutual and State Farm County to support written demands to settle the claims within policy limits, often within 15 days or less.

*Id*. ¶ 8.

Plaintiffs' claims center on the allegation that Dr. Misra recommends and administers medically unnecessary epidural steroid injections and recommends and performs medically unnecessary surgeries to inflate medical bills to increase the value of his patients' bodily injury or uninsured/underinsured claims. According to Plaintiffs, Misra submits the medical bills and records to his patients' personal injury attorneys to submit demands to Plaintiffs to settle the patients' claims. *Id*. at ¶¶ 9-10.

### III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes identifying those portions of the record that the party contends demonstrate the absence of a genuine dispute of material fact. *Id*. When seeking summary judgment on an affirmative defense, the movant "must establish beyond peradventure" each essential element of the defense. *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

But when "the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (quoting *In re: La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). The movant need not "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis omitted) (parenthetically quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (en banc)). In these instances, however, the movant must "point[] out that there is no evidence to support a *specific element* of the nonmovant's claim"; rather than making "a conclusory assertion that the nonmovant has no evidence to support his *case*." *Id*. at 335 n.10.

Once the movant has carried its summary judgment burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Additionally, courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

## IV. RICO CLAIM

The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation of section 1962" may bring a civil suit for treble damages. *Id.* § 1964(c). "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

RICO claims "have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam) (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). "A pattern of racketeering activity consists of two or more predicate acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Snow Ingredients, Inc. v. SnoWizard*, Inc., 833 F.3d 512, 524 (5th Cir. 2016) (quoting *St. Germain*, 556 F.3d at 263). Courts, furthermore, define "racketeering activity" through "reference to various state and federal offenses, each of which subsumes additional constituent elements." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).

Mail fraud is an indictable offense under 18 U.S.C. § 1341 and is specifically listed as an offense which falls within the meaning of "racketeering activity." *See* 18 U.S.C. § 1961(1). Section 1341 "applies to anyone who knowingly causes to be delivered by mail anything for the purpose of executing any scheme or artifice to defraud." *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (citation and internal quotation marks omitted). Mail fraud, as a predicate for a RICO claim, requires "evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

A violation of § 1341 requires "(1) a scheme to defraud; (2) use of the mails to execute the scheme; and (3) the specific intent to defraud." *United States v. Akpan*, 407 F.3d 360, 370 (5th Cir. 2005). One "acts with the intent to defraud when he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *Id*. (citation and internal quotation marks omitted). For purposes of using mail fraud as a predicate offense for civil RICO, plaintiffs must establish four elements:

(1) A scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representation or promises.

(2) Interstate or intrastate use of the mails for the purpose of furthering or executing the scheme or artifice to defraud.

(3) The use of the mails by the defendant connected with the scheme artifice [sic] to defraud.

(4) Actual injury to the business or property of the plaintiff.

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 428 (5th Cir. 1990).

Defendants urge the Court to grant summary judgment on the RICO claim for two independent and alternative bases: (1) Plaintiffs cannot establish the predicate act of mail fraud because they have no competent evidence of a pattern of racketeering by mail fraud as they lack any evidence of fraudulent or false representation by Dr. Misra or a specific intent to commit mail fraud

or deceive and (2) Plaintiffs cannot establish the requisite causal link between their purported injury and the alleged wrongdoing. Mot. ¶ 23. Defendants point to specific elements of Plaintiffs' RICO claim that lack evidence. Relying on Plaintiffs' factual allegations in the complaint, Defendants accurately argue that mail fraud is the only predicate for Plaintiffs' RICO claim. *Id*. ¶ 25. They recognize that Plaintiffs rely on various billings and other documents in their attempt to demonstrate a pattern of racketeering activity. According to Defendants, such evidence does not establish that Dr. Misra made any false or fraudulent representations about his medical evaluations, injections, or surgical recommendations he documented for the patients at issue.

## A. Fabricated Services/Patients

Defendants first submit that there is no evidence that Dr. Misra submitted fraudulent bills or supporting documentation for services that were not performed or billed to real patients receiving real treatment. Mot. ¶ 28. In other words, they contend that there is no evidence that Dr. Misra failed to perform any billed service or that he failed to bill for services rendered. *Id*. They state that there is no dispute that Dr. Misra's billing records were for real patients receiving real treatment.

Although Plaintiffs contest that latter statement, the gist of their dispute is that provided treatment was not "real" because it was not legitimately rendered or was not medically necessary. Resp. at 21–22. But the legitimacy or necessity of the treatment differs from a complete fabrication of treatment. Plaintiffs challenge Defendants' undisputed facts set out in paragraphs 28 and 29 of the motion. *See id*. But Defendants merely point out that Plaintiffs lack evidence to support a theory of fraud based upon unperformed services and then go on to cite to various case filings. *See* Mot. ¶¶ 28–29. Defendants satisfy their summary judgment burden by pointing to an absence of evidence. In response, Plaintiffs contend that

> it is very much disputed whether Dr. Misra (i) provided "real" treatment to the patients at issue; (ii) conducted legitimate examinations or falsified records to justify medically unnecessary treatment; (iii) performed medically unnecessary services to profit off their injury claims; or (iv) actually billed any patient for the services

> he purportedly provided, or generated bills to create the false impression patients
> owed the full amounts when he knew they did not.

Resp. at 22 (citing various paragraphs of Plaintiffs' statement of fact). The response misses the

point and does not identify any evidence that supports a theory of fraud based on unperformed

services. Dr. Misra is entitled to summary judgment on this aspect of Plaintiffs' RICO claim.

**B. Legitimacy and/or Necessity of Treatment**

Defendants next challenge Plaintiffs' "two other theories for the predicate mail fraud claim

that the medical reports and opinions of Dr. Misra were fraudulent by alleging the evaluations,

injections, and related services he provided 'were not legitimately performed or were not medically

necessary.'" Mot. ¶ 30 (emphasis omitted). They recognize that Plaintiffs rely on a medical expert

to support these theories. *Id*. ¶¶ 31–32. But they also recognize Fifth Circuit precedent that an

after-the fact expert opinion is not enough to support the RICO claim.

Defendants argue that "in the context of healthcare fraud, the Fifth Circuit has reasoned

that a difference in medical opinion is not sufficient to support the finding of fraud, let alone fal-

sity." *Id*. at 11–12 (citing *United States v. Mesquias*, 29 F.4th 276, 282 (5th Cir. 2022) (citing

*United States v. AseraCare, Inc.*, 938 F.3d 1278, 1285 (11th Cir. 2019) and *U.S. ex rel. Wall v.

Vista Hospice Care, Inc.*, No. 3:07-CV-0604-M, 2016 WL 3449833, at *19 (N.D. Tex. June 20,

2016)). In *Mesquias*, the Fifth Circuit indeed stated no disagreement with *AseraCare* or *Wall* while

noting that both cases had "recognized that stronger evidence, like facts inconsistent with doctor's

proper exercise of their clinical judgment, could change the outcome," as it did in the case before

the Circuit. *See* 29 F.4th at 282

Further, the Fifth Circuit voiced no disagreement with a theory of "objective falsity," other

than to disagree that expert testimony is required to prove such falsity. *Id*. While recognizing that

"health care providers cannot immunize themselves from prosecution by cloaking fraud with a

doctor's note," it reiterated that "[c]ategorical evidentiary requirements are at odds with a jury's

ability to consider a broad array of direct and circumstantial evidence." *Id*. Plaintiffs argue that this latter statement "rebuff[s] the very principle Defendants now argue—the notion that courts should give preference to one type of evidence over another." Resp. at 24. But that is not precisely the notion Defendants present. Defendants do not want to preclude expert testimony in every circumstance; they merely argue that after-the-fact expert testimony, standing alone, is not sufficient to support a claim of fraud. The Fifth Circuit even recognized that "a doctor's testimony that he lied" is more compelling than "an expert's testimony that he would have made a different clinical determination." *Mesquias*, 29 F.4th at 282–83.

Plaintiffs argue that *AseraCare* and *Wall* have no bearing in this RICO action because they arose in the context of the False Claims Act ("FCA"). *See* Resp. at 22. Despite the different context, the underlying concerns remain the same. Accordingly, this Court finds *AseraCare* and *Wall*, in conjunction with the discussion in *Mesquias*, persuasive as to the proposition that there must be some "evidence of fraud beyond (1) after-the-fact expert testimony that the initial [medical] determinations . . . were inaccurate, and (2) unrelated anecdotes of lax business practices." *See Mesquias*, 29 F.4th at 282; *accord AseraCare*, 938 F.3d at 1297 (requiring evidence that "the underlying clinical judgment" is objectively false); *Wall*, 2016 WL 3449833, at *18–19 (recognizing that evidence beyond an after-the-fact expert opinion is necessary).

A party can show objective falsehood "in a variety of ways": (1) evidence that a physician failed "to review a patient's medical records or otherwise familiarize himself with the patient's condition . . . reflects an objective falsehood" through "his ill-formed 'clinical judgment'"; (2) evidence that the "physician did not, in fact, subjectively believe" his stated clinical judgment; and (3) expert evidence which "proves that no reasonable physician could have" reached the same clinical judgment "given the relevant medical records." *AseraCare*, 938 F.3d at 1297. These examples each share a common factor—"the  clinical judgment on which the claim is based contains

a flaw that can be demonstrated through verifiable facts." *Id*.

But "a reasonable difference of opinion among physicians reviewing medical documenta-tion *ex post* is not sufficient on its own to suggest that those judgments—or any claims based on them—are false." *Id*. When a physician sincerely holds a properly formed clinical judgment, his or her judgment "is not untrue even if a different physician later contends that the judgment is wrong." *Id*. Plaintiffs "must show something more than the mere difference of reasonable opin-ion." *Id*. There must be facts or circumstances "that are inconsistent with the proper exercise of a physician's clinical judgment." *Id*. To permit "a mere difference of opinion among physicians alone to prove falsity would totally eradicate the clinical judgment required of . . .physicians." *Wall*, 2016 WL 3449833, at *18.

Although Plaintiffs argue that Defendants fail to carry their summary judgment burden in various ways, i.e., citing no evidence to support claimed facts or citing only to the complaint, their own dismissed counterclaims, their own two expert reports, or patient declarations, Resp. at 21, Defendants' summary judgment burden is not necessarily tied to those matters. As already dis-cussed, Defendants have carried their burden by pointing to specific elements of Plaintiffs' RICO claim that lack evidentiary support. That they cite to Plaintiffs' complaint does no more than ex-hibit agreement with a cited fact. If Plaintiffs dispute that fact they have means to object to the fact or to provide their own evidence to dispute the fact. And, while Defendants have no need to negate the elements of the RICO claim, they may certainly present evidence to do so. And by proffering their own evidence, they attempt to do so. Having found that Defendants have carried their sum-mary judgment burden, the Court considers whether Plaintiffs have provided evidence to create a genuine dispute of material fact. As discussed, Plaintiffs failed in that regard as to their theory of fabricated services rendered.

Throughout their response, Plaintiffs point to various submissions of evidence to support

their positions. The Court need not address all the evidence in detail, because the Court ultimately agrees that, with respect to the legitimacy and/or necessity of treatment, Plaintiffs have shown a genuine dispute of material fact relative to their RICO claim based on the medical records of Defendants. But still, Plaintiffs take interpretive liberty with some evidence. Thus, some discussion appears prudent regarding various submissions.

For example, Plaintiffs provide three emails from referring attorneys to support their position that Dr. Misra's treatment decisions were not based on legitimate medical decision-making. *See* Resp. ¶ 19 (identifying Exs. C-29, C-30, and C-31). Plaintiffs contend that these emails dictate the number and specific type of injections the referred patients were to receive. *See id*. Their contention, however, is not so clear. And the Court finds no basis to reasonably infer what Plaintiffs contend.

In the first email, law firm staff asks about a referred patient and states: "3 ESI pre-approved, any further need to be called in for atty review." ECF No. 92-38 (Ex. C-29). Medical staff responds that the patient is "scheduled for this afternoon" and further states, "ESI limit noted." *Id*. In the second email, law firm staff asks: "How many injections has [the referred patient] had and in what areas? Only 2 ESIs are approved." ECF No. 92-39 (Ex. C-30). Medical staff responds that the patient had received "1 lumbar esi." *Id*. In a third email, law firm staff inquires about the treatment status for a patient and asks: "How many injections has he received and when is he next scheduled? Also, he is approved for **only 2** injections." ECF No. 92-40 (Ex. C-31). Plaintiffs provide no medical staff response to this latter email.

These emails are vague as to the pre-approvals—is it merely a reflection that insurance covers a certain number of ESI or is the law firm stating a pre-approval for some reason? Moreover, the emails, especially the latter two, do not seem to dictate anything regarding treatment. The latter two both ask how many injections have been administered, but this seems unnecessary, if

the law firm was dictating to Dr. Misra how many injections to administer. The response to the second email, furthermore, indicates that only one injection had been administered even though two had been approved. For these reasons, the Court finds no reasonable basis to infer what Plaintiffs contend as to these emails.

To identify other evidence of fraud, Plaintiffs point to Defendants' billing records, treatment plans, and other documents. They contend that the patient records and bills "are fraudulent because they contain numerous misrepresentations," such as a lack of a legitimate examination by Dr. Misra and recommendations for medical procedures (ESIs and spinal surgeries) that were not medically necessary but instead recommended to substantially inflate the potential value of insurance claims. Resp. ¶ 28. As is often the case, Plaintiffs cite to numerous evidentiary exhibits in the aggregate to support a range of information within a purported factual paragraph. *See id.* (citing to the report of their expert as well as declarations of their claims personnel). This makes it difficult to determine the precise evidentiary basis for a given fact. And as noted above with respect to the emails from attorneys, Plaintiffs take unwarranted interpretive liberties with various submitted exhibits.

The medical and billing records, moreover, do not of themselves reflect medically unnecessary procedures or that they were submitted to inflate insurance claims. Nor do they of themselves necessarily reflect subpar examinations. The fraudulent gloss of the submitted documents does not come from the individual documents but from Plaintiffs' expert who has interpreted them and provides an after-the-fact opinion as to medical necessity.

To determine whether Plaintiffs have created a genuine dispute of material fact under the circumstances of this case, the Court disregards the after-the-fact expert opinion and its interpretive gloss when considering their proffered evidence. This is not a case where Plaintiffs' expert provides evidence which proves that no reasonable physician could have reached the same clinical

judgment as Dr. Misra given the medical records. Indeed, Defendants present their own experts that directly conflict with Plaintiffs' expert for some reviewed records.

Stripped of that interpretive gloss, and viewed in the light most favorable to Plaintiffs, their primary evidence consists of Defendants' medical records of 335 patients that show similar patterns in examination findings, diagnoses, and treatment recommendations. Plaintiffs argue that these patterns exhibit non-credible treatment that was not medically necessary for the patients. However, credibility determinations are for the trier of fact. This Court will neither weigh nor determine the credibility of witnesses or documents in the context of summary judgment.

Determining whether a course of treatment is medically necessary lies within the discretion of the medical provider. Even when a statute or regulation places an appropriate limit on services based on medical necessity, such statutory or regulatory authority "does not remove from the private physician the primary responsibility of determining what treatment should be made available to his patients." *Rush v. Parham*, 625 F.2d 1150, 1156 (5th Cir. 1980). Of course, physicians must "operate within such reasonable limitations" that may be imposed by statute or regulation. *Id.*

Here, Plaintiffs do not point to any violation of statute or regulation in contending that treatment rendered by Dr. Misra was not medically necessary. And while they provide some evidence from patients, the patients essentially state that they received treatment that had little to no beneficial effect. Having considered the submitted evidence as a whole, the Court finds Plaintiffs' best evidence lies within the patterns of treatment of the medical records of Dr. Misra. Such evidence, with other evidence, provides "sufficient circumstantial evidence from which a finder of fact would be justified in concluding that the necessary fraudulent intent was present." *State Farm Mut. Auto. Ins. Co. v. Complete Pain Sols., LLC*, No. 4:20-CV-2606, 2024 WL 3488256, at *10 (S.D. Tex. July 18, 2024). For the reasons that follow, the Court finds that the patterns of treatment

in this case provide enough circumstantial evidence on their own to present a genuine dispute of material fact.

Individually the submitted documents do not reflect unnecessary procedures or inflation of charges. Collectively they reveal marked similarities. But, even collectively, they do not evince any reasonable inference that Dr. Misra did not subjectively believe the stated clinical judgments that he recorded. Nevertheless, all things considered, the collective similarities provide some evidence to support a reasonable inference that Dr. Misra failed to conduct an individualized review of each patient's records or condition. Given the patterns within the treatment records and viewing the evidence in the light most favorable to Plaintiffs, the Court cannot find that Defendants are entitled to judgment as a matter of law on the RICO claim as premised on illegitimate or unnecessary treatment. One can reasonably view the patterns as evidence that Dr. Misra failed to review relevant medical records or otherwise failed to familiarize himself with the condition of patients referred to him for evaluation. Such a view of the evidence can reflect an objective falsehood through his ill-formed clinical judgments. There is thus a factual dispute as to whether Dr. Misra properly formed his clinical judgments.

Furthermore, whether such patterns are indicative of fraud or show treatment that is not credible given the medical records are matters "better suited for trial" because they effectively ask "the Court to do what it cannot do at a summary judgment proceeding: weigh the evidence." *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2021 WL 3489702, at *5 (E.D. Mich. Aug. 9, 2021) (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986)). Because "[c]redibility determinations . . . are within the province of the fact-finder," the Fifth Circuit has "emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991). Stated differently, "when state of mind is an essential element of the nonmoving

party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.'" *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (citation and brackets omitted). In short, "summary judgment is rarely proper in fraud cases because the intent required to establish fraud is a factual question 'uniquely within the realm of the trier of fact because it so depends upon the credibility of witnesses.'" *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 144 (5th Cir. 2004) (quoting *Beijing Metals & Minerals v. Am. Bus. Ctr.*, 993 F.2d 1178, 1185 (5th Cir. 1993)). "Intent to defraud is typically proven with circumstantial evidence and inferences." *United States v. Patel*, 485 F. App'x 702, 708 (5th Cir. 2012).

"Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)). Plaintiffs here provide more than such allegations, inferences, and speculation.

Applying the above law to the undisputed facts as shown by the medical records of Defendants, the Court can reasonably infer the necessary intent elements of the RICO claim. Viewing the medical records in the light most favorable to Plaintiffs, the Court finds that a reasonable jury could find the requisite intent from the patterns of treatment in such records. This does not mean that the patterns are in fact noncredible, and only explained by fraud, as asserted by Plaintiffs. Circumstances affect what is credible. Specialists, like Dr. Misra, may be expected to examine a sector of patients with similar issues. Add to that, referrals from attorneys who handle vehicle accidents, one would expect referred individuals to have similar issues. That Dr. Misra diagnosed similar conditions may be nothing more than a reflection of his patients or his specialty or perhaps a predilection for a particular treatment plan. The similarities may also represent lax business

practices or over-reliance on medical templates. Thus, the credibility of Dr. Misra will likely be crucial to the jury's deliberations. But at this stage, the Court does not weigh the evidence or make credibility determinations. It instead must look at the evidence in the light most favorable to the nonmovant. And through the lens of summary judgment, subject to the analysis in the next section, the RICO claim survives to the extent Plaintiffs premise it on illegitimate or unnecessary treatment.

## C. Causal Link

Defendants also argue that Plaintiffs cannot establish a causal link between alleged fraudulent conduct and the alleged harm to Plaintiffs. Mot. ¶¶ 46–50. To establish an injury was caused by reason of the predicate acts, a plaintiff must show the predicate act "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). But for "cases predicated on mail or wire fraud, reliance is not necessary." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)). As recognized in *Plambeck*, this differs from claims asserting common-law fraud. *See id.* (citing *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007)).

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Indirect links or those that are "too remote" or "purely contingent" are not sufficient. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 271, 274). "Allowing suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits." *Holmes*, 503 U.S. at 274 (citation, internal quotation marks, and brackets omitted). Through this "string of cases" (*Hemi*, *Anza*, and *Holmes*), "the Supreme Court has made it clear that proximate causation is lacking when the

alleged harm is distinct from the alleged RICO violation." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 644 (S.D. Tex. 2016). As Justice Thomas recognized in his concurring/dissenting opinion in *Anza*, the proximate cause requirement for civil RICO is "stringent," and thus may "succeed[ ] in precluding recovery in cases alleging a violation of § 1962(c) that . . . have nothing to do with organized crime, the target of the RICO statute."[3] 547 U.S. at 463 (Thomas, J., concurring and dissenting). Although the instant case has no apparent connection to organized crime, the current state of the law supports finding the requisite proximate cause.

In the context of a motion to dismiss, *Benhamou* found a sufficient link in a similar RICO case. 190 F. Supp. 3d at 645. It found the "alleged harm" to the plaintiff insurance company was "the overpayment of at least 51 claims based on fraudulent bills and reports, and the alleged fraud is Defendants' submissions of fraudulent bills and reports, which [the insurance company] then paid by settlement checks sent via U.S. mail." *Id*. The district court found the insurance company "was the object" of the fraud, "rather than being an indirect or incidental party to the fraud." *Id*. The court recognized that "[t]he evidentiary burden on the non-movant in a summary judgment motion is significantly greater than in a motion to dismiss." *Id*. (quoting *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991)).

In a more recent case in the context of summary judgment, the Southern District has also discussed proximate cause in similar circumstances. *See State Farm Mut. Auto. Ins. Co. v. Complete Pain Sols., LLC*, No. 4:20-CV-2606, 2024 WL 3488256, at *6 (S.D. Tex. July 18, 2024). The court "disagree[d] that the Plaintiffs have to prove that they would not have settled the claims." *Id*.

---

[3] Over the years, civil RICO has evolved "into something quite different from the original conception of its enactors." *See Anza*, 547 U.S. at 471 (Thomas, J., concurring and dissenting) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500 (1985)). As succinctly stated by Justice Thomas: "Judicial sentiment that civil RICO's evolution is undesirable is widespread." *Id*. But that is not a matter for this Court. Until a higher authority alters the legal landscape, this Court will faithfully apply the existing law of RICO to the facts of the cases before it. But it bears noting the sentiment of the late Justice Rehnquist, even in 1989, some viewed "that the time has arrived for Congress to enact amendments to civil RICO to limit its scope to the sort of wrongs that are connected to organized crime, or have some other reason for being in federal court." Rehnquist, Remarks of the Chief Justice, 21 St. Mary's L.J. 5, 13 (1989).

It instead found that the insurance companies "must prove that they would not have paid as much as they did but for Defendants' conduct." *Id*. The Court recognized the usual rule that "causation inquiries are typically questions of fact for the jury to decide." *Id*. at *7. However, because the Plaintiffs did not describe the evidence specifically or provide a specific location to find the evidence, the Court declined to apply the usual rule. *Id*. It instead undertook its own search for "evidence that raises a fact issue on the pertinent causation" and found a dispute of material fact as to causation for eighteen claim numbers, while finding no dispute "of material fact as to the other nine claims," and thus dismissed them on summary judgment. *Id*.

The parties take divergent views as to whether the alleged fraud of Dr. Misra proximately caused Plaintiffs' injuries. They raise similar issues as raised in *Complete Pain* and this Court finds some guidance through that case, as well as *Benhamou*, despite the recognized difference between summary judgment and a motion to dismiss. And while the Court may have concerns about the causal connection, in cases "where the evidence could support a verdict for either side, depending upon the evidence the jury credits and the reasonable inferences drawn from that evidence" such cases are "tailor-made for trial, not summary judgment." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 973 (5th Cir. 2019). And while, in some cases, the Court may narrow the number of claims as did the court in *Complete Pain*, the Court declines to take such extraordinary efforts in the context of this case having 335 patients at issue.

## D. Conclusion as to RICO Claim

The Court finds a genuine dispute of material fact that precludes summary judgment for Defendants on the RICO claim premised on the illegitimacy and medically unnecessariness of provided treatment. Summary judgment is warranted on the RICO claim to the extent Plaintiffs premise the claim on fabricated treatment or patients.

## V. MONEY HAD AND RECEIVED

"A case for money had and received looks solely to whether the defendant holds money that belongs to the plaintiff." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 369 (W.D. Tex. 2020) (quoting *Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. CV H-12-1206, 2016 WL 7496743, at *2 (S.D. Tex. Dec. 31, 2016)). For such a claim, "Texas follows the ordinary principles of common law":

> The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

*Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951)). "Such a claim 'is equitable in nature' and 'is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *City of San Antonio v. Time Warner Cable, Tex. LLC*, 532 F. Supp. 3d 402, 428 (W.D. Tex. 2021) (quoting *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015)).

Defendants urge the Court to grant them summary judgment on Defendants' money had and received claims for three independent and alternative reasons: (1) the claim is barred by the two year statute of limitations; (2) the claim is barred by the doctrine of voluntary payment; and (3) there is no evidence that Defendants hold any money that "in equity and good conscience" belongs to Plaintiffs. Mot. ¶ 13. Although Defendants present this third basis in an early paragraph, they do not address it later in their motion. Accordingly, the Court will only consider the two defenses that they raise.

**A. Statute of Limitations**

Although there is disagreement "as to whether a two or four year limitations period applies to claims for money had and received," *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 846 n.3 (S.D. Tex. 2018) (citing cases), the better argument seems to favor a two-year period, because such claim "is equitable in nature and "belongs conceptually to the doctrine of unjust enrichment," *see Pollard v. Hanschen*, 315 S.W.3d 636, 641 (Tex. App.—Dallas 2010, no pet.) (quoting *Edwards v. Mid–Continent Office Distrib., LP*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied)). The Texas Supreme Court has definitively held that unjust enrichment claims fall under the two-year statute of limitations of Tex. Civ. Prac. & Rem. Code § 16.003(a), rather than treating such a claim as a debt that falls under the four-year limitations period of § 16.004(a). *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007). In doing so, the Texas Supreme Court expressly affirmed two prior pronouncements to the same effect. *See id.* (discussing prior cases in 2001 and 1998).

Without the benefit of the above decisions of the Texas Supreme Court, the Fifth Circuit applied a four-year limitations period to a claim for money had and received. *Peerless Ins. Co. v. Texas Commerce Bank–New Braunfels, N.A.*, 791 F.2d 1177, 1179 (5th Cir. 1986). That decision, furthermore, dealt with a bank's payment of a forged check to the detriment of the rightful owner of the funds. *See id.* That differs materially from the circumstances here that involves no contract and is based purely on equitable principles.

When deciding issues of substantive state law, courts look to "final decisions of the state's highest courts," and absent such a decision, they must make an *Erie*-guess as to predict how the state's highest court would decide an issue. *Gaia Tech. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 375 n.11 (5th Cir. 1999) (making an *Erie*-guess on Texas law when district court had supplemental jurisdiction over state claims). Under the facts here, this Court predicts that the highest

court of Texas would apply the two-year statute of limitations to the money had and received claim asserted. Not only is this consistent with the analysis in *Elledge*, but it is consistent with a concession by State Farm in a similar RICO case with a supplemental money had and received claim. *See State Farm Mut. Auto. Ins. Co. v. Complete Pain Sols., LLC*, No. 4:20-CV-2606, 2024 WL 3488256, at *10 (S.D. Tex. July 18, 2024). Defendants argue that Plaintiffs here are bound by the concession in *Complete Pain*. *See* Reply ¶ 96. Given the consistency with *Elledge*, the Court sees no need to consider the argument or cases presented in support of that argument. Consistency with *Elledge* is what matters, along with various lower state appellate courts agreeing, *see*, *e.g.*, *Pollard*, 315 S.W.3d at 641; *Edwards*, 252 S.W.3d at 837.

This ruling in favor of Defendants, however, does not end the inquiry. And as was the case in *Complete Pain*, this Court finds that Defendants have not carried their burden to establish their limitations defense. The Court finds a genuine dispute of material fact as to when this claim accrued in light of the asserted application of the discovery rule. *See* 2024 WL 3488256, at *10–12. Defendants stress that Plaintiffs have judicially admitted that they "knew or should have known of the alleged fraudulent conduct by April of 2019, 'at the earliest.'" Reply ¶ 102 (quoting Compl. ¶ 80). While this statement in the Complaint indicates that April 2019 is the earliest that Plaintiffs knew or should have known of Defendants' fraudulent conduct, the statement is not enough to alter the Court's view. At most, the statement may concede that, as early as April 2019, Plaintiffs knew or should have known of some of the fraud. But the statement is simply too ambiguous and leaves too many unanswered questions as to when Plaintiffs' claims accrued.

### B. Voluntary Payment Doctrine

Texas law recognizes a voluntary-payment doctrine as a "common law defense." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005). Stated simply: "[M]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception,

duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *Id.* (quoting *Pennell v. United Ins. Co.*, 150 Tex. 541, 243 S.W.2d 572, 576 (1951). Defendants' reliance on this doctrine is dependent on Plaintiffs' "own admission" that they "paid to settle the personal injury claims *after* becoming aware of Defendants' alleged conduct in April of 2019." *See* Reply ¶ 103. Thus, this defense suffers from the same ambiguity of the April 2019 statement of Plaintiffs. The Court finds that Defendants have not carried their burden on this defense.

**C. Conclusion as to Money Had and Received**

As explained above, Defendants have not caried their burden on either defense raised against Plaintiffs' money had and received claim. Accordingly, summary judgment is denied as to this claim.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment (ECF No. 85). The motion is granted only as to Plaintiffs' RICO claim premised on fabricated services or patients. This case does not involve Defendants billing for services not rendered or billing for fabricated patients. The motion is otherwise denied, and the case will proceed to trial as scheduled.

**SIGNED this 23rd day of June 2025.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**